The motion to remand, therefore, will be sustained.

---

**ÆTNA FIRE INS. CO. et al. v. SHANKS, State Auditor, et al.**

**HENRY CLAY FIRE INS. CO. et al. v. SAME.**

(District Court, E. D. Kentucky. August 30, 1926.)

Nos. 1044, 1045.

1. **Insurance** ⬅️11—**Increase of insurance rates by rating bureau, without filing copy of agreement for increase before taking effect thereof, held invalid (Ky. St. §§ 762b25–762b33).**

Ky. St. §§ 762b25–762b33, provide for a rating bureau, of which insurance companies doing business in the state are required to be members. Section 762b33 provides that no company or rating bureau shall enter into or act on any agreement with regard to the making or collecting of rates without a copy being filed with the state auditor prior to the taking effect thereof. The rating bureau established by the companies consisted of a single individual, who held a power of attorney from each company. *Held*, that section 762b33 applied to an announcement by him of a state-wide horizontal increase in rates, since his act was actually or constructively pursuant to an agreement between the companies, his principals, and, in the absence of compliance therewith, the increased rate was not lawfully in force.

2. **Insurance** ⬅️10—**Statute relating to insurance rates held to retain power of regulation in the state (Ky. St. §§ 762b25–762b33).**

It was not the intention, by Ky. St. §§ 762b25–762b33 to surrender the control over insurance rates theretofore exercised by the state, through a state insurance board, which was abolished, but to permit rates to be initiated by the companies, subject to supervision of the state auditor, whose action was made reviewable by the courts.

3. **Constitutional law** ⬅️298(1)—**Insurance** ⬅️4—**Statute as to fixing of insurance rates held not to deny due process of law (Ky. St. §§ 762b25–762b33; Const. U. S. Amend. 14, § 1).**

Ky. St. 1922, §§ 762b25–762b33, requiring copy of agreement by insurance companies or rating bureaus as to rates to be filed with state auditor, who, after hearing, may disapprove it, subject to court review, *held* not to take property without due process of law, in violation of Const. U. S. Amend. 14, § 1, at least so far as it provides for such filing.

In Equity. Suit by the Ætna Fire Insurance Company and others and by the Henry Clay Fire Insurance Company and others, against W. H. Shanks, as State Auditor of Kentucky, and others. On motions for preliminary injunctions. Denied.

Joseph S. Laurent, of Louisville, Ky., Robert J. Folonie, of Chicago, Ill., and Frederick D. Silber, of Chicago, Ill., for plaintiffs.

Frank E. Daugherty, Atty. Gen., and Gardner K. Byers, Asst. Atty. Gen. (Guy H. Briggs, of Frankfort, Ky., of counsel), for defendants.

Before DONAHUE, Circuit Judge, and COCHRAN and HICKS, District Judges.

PER CURIAM. These two suits are here on motions for interlocutory injunctions. The plaintiffs in the one are stock fire insurance companies, 163 in number, licensed to do and doing fire insurance business in Kentucky, who are incorporated in states other than Kentucky and in countries foreign to the United States. The plaintiffs in the other are 3 such companies, 2 of whom are incorporated in Kentucky and 1 in the District of Columbia. The plaintiffs in the two suits constitute all the stock companies doing fire insurance business in Kentucky except 2, who did not join in either suit for reasons not necessary to state. All of the plaintiffs in both suits are also licensed to do and are doing windstorm insurance business in Kentucky. The defendants in each suit are, respectively, the auditor, the insurance commissioner, and the Attorney General of Kentucky.

The ground of jurisdiction of the one suit is diversity of citizenship, and that it arises under the Constitution of the United States; that of the other is that it so arises. The interlocutory injunctions sought are to restrain action on the part of the defendants which interferes with, and which, if not restrained, will prevent, plaintiffs' charging and collecting an increase in rates of 12½ per cent. on all fire and windstorm insurance done by them

in Kentucky, which became effective August 2, 1926, the day before these suits were begun.

It is alleged in the bills that for the five years preceding this—i. e. for 1921, 1922, 1923, 1924, and 1925—the losses and expenses of the stock fire insurance companies doing business in Kentucky, including plaintiffs, on their fire insurance business done therein, amounted to $56,605,126, and that their income from earned premiums on such business amounted to $46,007,501, thus making their losses and expenses for that period on this account exceed such income to the extent of $10,597,625, and that for that period the losses and expenses of such companies on their windstorm insurance business done therein amounted to $6,190,026, and their income from earned premiums on such business for that period amounted to $3,962,282, thus making their losses and expenses on this account exceed such income to the extent of $2,227,744. It may be taken, therefore, that, according to these allegations, during that period the plaintiffs did their fire insurance business in Kentucky at a net loss of over $10,000,000, and their windstorm business therein at a net loss of over $2,000,000. It is further alleged in the bills that, at the time of the making of the increase referred to, plaintiffs were then doing business in Kentucky at such a loss, and that the increase of 12½ per cent. in the rates for such insurance will not yield them a profit; that, notwithstanding such increase, they will still be doing business at a loss, and that they are willing to continue to do business with such increase, trusting to future experience.

These facts, thus alleged, are set forth as the justification for such increase, and it is claimed that, by reason thereof, the action of the defendants, who are state officers and acting in their official capacity in the particulars complained of, amounts to depriving them, by the state of Kentucky, of their property without due process of law, in violation of the first section of the Fourteenth Amendment to the federal Constitution. The action complained of consists in denying the right of plaintiffs to charge and collect such increase, in demanding of plaintiffs' local agents that they disobey instructions to charge and collect it, and in threatening them, in case they do, with prosecution under a statute which prescribes severe penalties for so doing, and further in the bringing of an action by the defendant Shanks as auditor in the Franklin circuit court, the day after these suits were brought, to restrain plaintiffs from charging and collecting such increase.

The defendants do not question plaintiffs'

right to a reasonable profit. Thus far they have not controverted the allegations of the bill as to their doing business in Kentucky at a loss. As to windstorm insurance they concede the legality of the increase, and disclaim any intent to interfere with plaintiffs in charging and collecting it. Their position as to the increase, so far as fire insurance is concerned, is that it is illegal, in that a certain course of procedure, prescribed by a valid statutory provision, the following of which was essential to its legality, was not followed. This being so, they have the right to prevent its being charged and collected. The questions before us for determination, therefore, are whether the statutory provision relied on applied to the increase in question, and, if it did, whether it was valid; i. e., free from any constitutional objection. This provision is one of several having to do with the making of rates to be charged and collected by stock companies for fire insurance done in Kentucky. Those provisions are 762b25 to 762b33, inclusive, of Carroll's Kentucky Statutes (6th Ed.) 1922, which are sections 25 to 33, inclusive, of the Act of March 13, 1920, Acts Kentucky 1920, c. 16. It is section 762b33, or section 33 of the original act, which is relied on by defendants. To properly understand it a general survey of the preceding eight sections should be made.

Section 762b25 provides for the creation of a rating bureau. It contemplates that there may be a number of bureaus, but as only a single bureau has been created thereunder it may be dealt with as if that was all that it called for. Its membership consists of all the stock fire insurance companies doing business in Kentucky, each of whom is required to be a member of it. This bureau is empowered to make rates. There is no express provision to this effect. The power to so make them is an implication from its name, and provisions in this and subsequent sections, which presuppose that it has such power, and regulate its exercise. There being no such express provision, there is no definition of the extent of the power. In reality the rating bureau is the insurance companies themselves, acting through a special agency in the exercise of their function to prescribe the rates at which they will do business. What it does they do.

The next section may be passed.

Section 762b27 provides for the auditor obtaining information from the rating bureau as to its organization, maintenance, and operation, and for the filing by it with him of schedules, rates, forms, regulations, and documents giving other information.

Section 762b28 provides for an examination of the rating bureau by the auditor.

Section 762b29 prohibits the rating bureau from fixing a rate which unfairly discriminates between risks.

Section 762b30 provides for deviation by an insurance company from the rates made by the rating bureau.

Section 762b31 is in part in these words:

"The said auditor is hereby empowered, upon written complaint or upon his own information that any rate discriminates unfairly between risks, * * * to order a hearing for the purpose of determining such question of discrimination. The review of such rate before said auditor shall be had only after due notice to all parties interested. If upon such hearing the auditor shall determine that such discrimination exists, he shall have power to order such discrimination removed."

Section 762b32 is in part in these words:

"The auditor shall, upon written complaint or upon his own motion, have power to investigate the necessity for a reduction of rates, and upon investigation, shall have power to order such reduction if the result of the business of the stock fire insurance companies, in this commonwealth, for five years next preceding said investigation shows that there has been an aggregate profit in excess of a reasonable amount, but in no event shall said auditor have power to order any reduction in rates in this commonwealth which will prevent a reasonable aggregate profit to the stock insurance fire companies licensed therein."

Section 762b33 is in full in these words:

"No fire insurance company and no rating bureau or other representative of any fire insurance company or other insurer or rating bureau, shall enter into or act upon any agreement with regard to the making, fixing or collecting of any rate for fire insurance upon any property within this commonwealth, except in compliance with this section; but any agreement may be made and enforced provided same be not contrary to law or public policy, and be in writing, and prior to its taking effect, a copy thereof be filed with the auditor and with each rating bureau of which any of the parties thereto shall be a member or subscriber. The auditor may after due notice and hearing, upon complaint or upon his own motion, make an order disapproving any such agreement, which does not conform to the provisions of this section, and no such agreement shall be in force nor shall any right be based thereon after service of a copy of such order upon each of the parties to such agreement, and upon each bureau with which such agreement is required to be filed. Any order made by the auditor shall be subject to court review and the auditor may institute action in any circuit court having jurisdiction to compel any company or bureau to obey any order promulgated by the auditor."

[1] We come, then, to the question whether section 762b33 had application to the increase involved here. The plaintiffs claim that it came about in this way. The rating bureau is, as we have seen, in reality the insurance companies themselves, exercising their function of making rates through a special agency. This agency consists of a single individual, to wit, George H. Parker, who acts under the name of Kentucky Actuarial Bureau, and styles himself manager, and who maintains an office at Louisville. He has a power of attorney from each of the insurance companies authorizing him to exercise this function. He, of his own accord, determined that there should be a 12½ per cent. increase in rates, and thereupon, on August 2, 1926, sent to each of the companies for whom he was acting and to each local agent in Kentucky a notice of which the following is a copy, to wit:

"Kentucky Actuarial Bureau.

"Fire.

"Louisville, Kentucky.

"George H. Parker, Manager.

"August 2, 1926.

"To Subscribers and Local Agents:

"On and after August 2, 1926, all fire insurance rates published by this office must be increased 12½ per cent. This increase is applicable to all fire rates, regardless of whether specifically published or rated under the abstract, dwelling schedule, or any special schedule. This increase applies to all fire rates, regardless of whether published before or after August 2, 1926, and must be applied in each instance by the agent in arriving at the final rate for each risk.

"Yours very truly,

"G. H. Parker, Manager."

At the same time he sent a copy thereof to the auditor. This was all that was done in connection with the making of the increase, according to plaintiffs' claim. Its making came about in this way, and not otherwise. It did not come about in pursuance to an agreement entered into by the insurance companies. Section 762b33, they claim, applies to a statewide horizontal increase in rates only where it comes about in pursuance to such an agreement, and, not having so come about, it did not apply, and the course of procedure prescribed thereby did not have to be followed. They claim further that, if it did apply, it was followed by filing with the auditor a copy of the notice to subscribers and local agents. Such, then, we understand to be plaintiff's position as against defendants' contention

that the increase in question here is illegal, because the course of procedure prescribed by that section was not followed. Is it sound in either particular?

On its face this section has application only where an agreement has been entered into "with regard to the making, fixing or collecting of any rate for fire insurance upon any property within this commonwealth," and it applies as well where the agreement has regard to a decrease as where it has regard to an increase of rates. That in order to its application something more is essential than action on part of the rating bureau, of its own accord, increasing or decreasing rates, is indicated by the requirement that a copy of the agreement shall be filed with the rating bureau as well as the auditor. This is indicated further by the prohibition that no insurance company and no rating bureau shall enter into or act upon such an agreement, as if the intent was that the prohibition as to entering into the agreement was directed against the insurance companies, and that as to acting on it against the rating bureau, which would have been the case, had the wording been that no insurance company shall enter into such agreement and no rating bureau shall act upon it.

What, then, is to be said as to this view of this section? The power to make a state-wide horizontal increase or decrease in insurance rates is a very important one. Its exercise is a very serious matter. The responsibility of one in whom such power is lodged is great. It is likely that, if it is lodged in a single individual as the agent of the insurance companies, he would be inclined to shrink from having to exercise it of his own accord. It is not likely that the insurance companies would be willing that an agent of theirs should have the power to make such an increase or decrease without first consulting them, and their agreeing in advance that he make it. Possibly they might be more disturbed if he undertook of his own accord to make such a decrease. But it is extremely likely that they would be greatly disturbed if he so made such an increase. It is calculated to involve them in trouble from the start. Nor is it likely that the Legislature would be willing to confer such power on him. Such being the case, the terms of section 762b33 can be accounted for on the basis that it was not the thought and intent of the statutory provisions to which it belongs that the rating bureau, for whose creation they provide, should have any such power, and that, on the contrary, it was their thought and intent that such increase or decrease could only be brought about by action on the part of the rating bureau pursuant to an agreement entered into by the insurance companies.

[2] As heretofore stated, nowhere in any of those provisions is there any definition of the powers of the rating bureau. If such power is thereby conferred on the rating bureau, it is a matter of implication, and not of express provision. This view is enforced by a consideration of the situation existing at the time of the enactment of the Act of March 13, 1920. The legislation then in force is to be found in Kentucky Statutes, Carroll 1918, and Kentucky Statutes, Carroll 1915, § 762c, subds. 1 to 14, inclusive, which is an act approved March 4, 1912 (Acts Ky. 1912, c. 5), and section 762d, subds. 1, 2, 2a, 6, and 13, which is an act approved March 7, 1914 (Acts Ky. 1914, c. 6), and which purports to amend the Act of March 4, 1912. This legislation is not easy to comprehend in all its details, but there would seem to be no room for question as to some of its outstanding features. It created a state insurance board, composed of three members, the insurance commissioner and two others appointed by the auditor. It conferred on this board the power to make basic rates after due notice and hearing and subject to an appeal to the courts; and though the insurance companies were to make specific rates by the application of the basic rates made by the board, the specific rates, when thus made, became the legal rates, had to be reported to the board, and it would seem that it had power to modify them after due notice and hearing, and subject to such an appeal. And section 762d, subd. 2, contained this provision:

"At any time in the opinion of the state insurance board an emergency arises that justifies a percentage increase in rates or a percentage reduction in rates, on any class of risks, the board shall have power to so order such change after a thorough investigation, subject, however, to the same course of procedure as prescribed for the publication of a general basis schedule, including the right of appeal to the courts of this commonwealth."

This legislation was repealed by the Act of March 13, 1920, of which the statutory provision in question is a part. The state insurance board was thereby abolished, and the state's control over rates through it, including the power to increase or decrease rates horizontally, was surrendered. The power to make rates was transferred to and conferred upon a rating bureau, which in reality was the insurance companies themselves. The thought seems to have been that this was a matter which could be better handled by such a bureau than a state board. It may be tak-

en that, when this took place, the rates in force were rates made or approved by the state through its state insurance board and acquiesced in at least by the insurance companies. It was to be expected that the Legislature, in making this change, would retain as complete control over the making of rates as before, the only change being in the form of the control. So we find that the Act of March 13, 1920, gave the auditor, by sections 762b27 and 762b28, general supervision over the rating bureau. It empowered him to remove discriminations in the rate made by the rating bureau. It empowered him also to reduce rates, if they yielded the companies more than a reasonable profit.

It is claimed by plaintiffs that this provision is unconstitutional, because it did not provide for notice and hearing. Though there is no express provision for notice and hearing in this section, it may be that, in view of the provisions for notice and hearing in the preceding and succeeding sections, it was the intent that there should be notice and hearing in that instance also. But, however this may be, the provision indicates that the intent was that the auditor might reduce the rates, if they yielded more than a reasonable profit. Furthermore, it is conceded that by the section in question, if a state-wide horizontal increase or decrease comes about through the action of the rating bureau, pursuant to an agreement entered into by the insurance companies, section 762b33 applies, and the matter has to be laid before the auditor in the way provided, and he is empowered to disapprove it.

Yet, notwithstanding this control, all along the line down to this point, it is contended that, if a state-wide horizontal increase is brought about through the action of the rating bureau, acting of its own accord, the auditor has nothing to do with it, and it is legal without laying the matter before him in such way, and thus giving him the opportunity to disapprove it. Such cannot have been the intent of the Legislature. No conceivable reason can be urged why such action should have been left free of any control whatever on the part of the auditor. That there is no express reference in the section, or elsewhere in the act, to a state-wide horizontal increase or decrease thus brought about, is reasonably to be accounted for, as heretofore set forth, on the basis that it was not within the thought and intent of the statute that such increase or decrease could be brought about in this way. Within its intent and meaning it could only be brought about by action on the part of the rating bureau in pursuance to an agreement entered into by the companies.

But it cannot be accepted that the action of the rating bureau involved here was not in pursuance of an agreement entered into by the insurance companies whom it represented. It is true that it is alleged in the supplemental and amended bills that the increase was not made in pursuance to an agreement entered into by the insurance company. But this cannot be accepted without more information than is disclosed in the bills as to the facts which led up to the increase. In the fifteenth paragraph of the third division of the bills it is alleged that the bureau, acting for the respective claimants, notified the defendant Shanks and Saufley, the auditor and insurance commissioner, "that complainants had effected an increase of rates on August 2, 1926, to the extent of 12½ per cent."

In their briefs they say: "On August 2, 1926, the respective complainants, through Kentucky Actuarial Bureau, which represents each of them and is an organization provided for by the statute, promulgated and published a rate increase upon fire insurance and upon windstorm insurance, creating an increase of premiums of 12½ per cent. over the preexisting level, the increase being state-wide."

It seems impossible for plaintiffs to state what has been done, except in a way that involves an agreement on their part in pursuance of which the increase was made. It is not likely that the rating bureau would have made the increase of its own accord, without the previous understanding, agreement, and direction of the principals that it should be made. With conditions such as they are, as set forth in the bills, it is inconceivable that plaintiffs would sit still and not get together and come to an agreement that there should be an increase in rates. How did the rating bureau get the information on which it acted, unless it was furnished it by its principals for the purpose of acting thereon? Still further, even if the rating bureau acted of its own accord in making the increase—i. e., without previously consulting its principals—it must be held that there was an agreement on their part that it should so act and that its action was pursuant to such agreement. As hereinbefore set forth, the rating bureau is the agent of the insurance companies who constitute its membership. Its manager has power of attorney from each one of them to act for it in the making of rates. Whatever it did, each one of its principals did. In the making of the increase, they, through it, acted together. Their so acting together must have been pursuant to an agreement that they should do so. It cannot otherwise be accounted for.

It must be held, therefore, that the in-

crease of which the defendants complain, and which plaintiffs seek to have maintained by the process of this court, was within the purview of section 762b33. Was the requirement complied with? The plaintiffs claim that by the filing of the copy of the notice of the increase made by the rating bureau through its manager it was complied with. Such filing, however, was not intended as a compliance therewith. The claim is that there was no agreement, and hence that the statute did not have to be complied with. Such filing, therefore, can hardly be treated as a compliance with the statute. But, whatever may be the truth as to this, it was not filed with the auditor before the agreement took effect. It was filed after it took effect, though on the same day. The provision does not say how long the written agreement shall be filed before it takes effect. Inasmuch as it provides that upon its being filed the auditor may, after due notice and hearing, disapprove of the agreement, it would seem that it should be filed sufficiently long before it is to take effect to afford the auditor a reasonable opportunity to have a hearing after due notice as to whether it should be approved and determine whether it should be approved.

There was ample time between the end of the disastrous five-year period and August 2d last for this, had plaintiffs availed themselves of it. But the question as to how long the written agreement is to be filed before it takes effect is not necessarily before us for determination. It is sufficient that what plaintiffs claim answers thereto was filed after, and not before, it took effect. The provision limits the hearing, if the written agreement is filed, to whether it is contrary to law or to public policy. It would seem that an agreement calling for an increase which yields more than a reasonable profit is contrary to public policy, if not contrary to law. Rates that yield such a profit are condemned by the preceding section.

The plaintiffs cite the decision of the Supreme Court of the United States in the case of Interstate Commerce Commission v. Cincinnati Ry. Co., 167 U. S. 479, 17 S. Ct. 896, 42 L. Ed. 243, and other authorities, in support of the position that power on the part of state officials to fix or regulate rates is not to be implied. It must be expressly conferred. Our conclusion that the auditor has power to pass on an agreement calling for an increase in rates is not based on an implication, but on the express requirement of the statute.

[3] Taking the meaning of this provision to be as we have construed it, is it valid? It is essential that it be so, in order that noncompliance therewith shall effect the legality of the increase. In the case of German Alliance Ins. Co. v. Lewis, 233 U. S. 289, 34 S. Ct. 612, 58 L. Ed. 1011, L. R. A. 1915C, 1189, it was held that the business of fire insurance is so far affected with a public interest as to justify legislative regulation of its rates. See, also, the case of Merchants' Liability Co. v. Smart, 267 U. S. 126, 129, 45 S. Ct. 320, 69 L. Ed. 538. Such being the law, we know of no reason why a statutory provision requiring that an agreement entered into by insurance companies, calling for an increase in their rates from what they have theretofore been, which is to be put into effect by a special agency created by them for that purpose, shall, before they are so put in effect, be filed with a state official, is not valid.

We do not understand plaintiffs to contend otherwise. In their bills plaintiffs claim that, if the statutory provision in question leaves the making of an increase to the arbitrary disapproval of the auditor, without process, hearing, or right of plaintiffs to be heard, it is in violation of the first section of the Fourteenth Amendment. This is undoubtedly true. But such is not its character. It does not permit of an arbitrary disapproval, and it provides for notice and hearing before there can be a disapproval. It must be taken that the auditor will give a fair hearing after due notice, and that he will not disapprove unless the facts require that he should do so, and his action is subject to court review. The plaintiffs are entitled to rates which will yield a reasonable profit, and there should be no disposition anywhere to deny them such rates.

It is suggested that the provision that the agreement shall not be in force and no right shall be based thereon after service of a copy of the order as therein provided is unconstitutional, notwithstanding the provision for a court review of the order, in that it contemplates that the rates called for in the agreement may not be charged and collected pending such review, and if they are charged and collected during that time plaintiffs and their agents would be subject to the penalties imposed by section 762b34, which are so severe as to deter them from charging and collecting them.

The decision in the case of Oklahoma Operating Co. v. Love, 252 U. S. 331, 40 S. Ct. 338, 64 L. Ed. 596, is cited in support of this position. Assuming this to be a true construction of the provision, and that such is the law, it does not follow therefrom that the requirement that a copy of the written agreement shall be filed with the auditor before it

goes into effect is also unconstitutional. It is, at least, legally possible that the auditor may not disapprove the agreement. He may approve it or he may let it go into effect by not disapproving it. Plaintiffs will not suffer any injury unless he does disapprove it.

The motions for interlocutory injunctions are therefore overruled. As to windstorm insurance they are overruled, because defendants concede that plaintiffs are entitled to the increased rates as to such insurance, and disclaim any intention to interfere with them.